37222. WILLIAMS, Commissioner for use, etc. *v.* SUMMEROUR *et al.*

DECIDED SEPTEMBER 4, 1958—REHEARING DENIED SEPTEMBER 22, 1958.

216

*Otis L. Hathcock, D. J. Ratliffe,* for plaintiff in error.

*James M. Roberts,* contra.

FELTON, Chief Judge. The question is whether the employees of the defendants in fi. fa. are agricultural laborers as to their duties after the cotton is ginned. The defendants in fi. fa. concede that the act must be construed liberally in favor of coverage and the exemption in favor of agricultural labor must be strictly construed. That portion of the act exempting agricultural labor provides that "agricultural labor" includes all services performed "in handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations or, in the case of fruits and vegetables, as an incident to the preparation of such fruits or vegetables for market. The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption." Code (Ann.) § 54-657 (h) (7) (A) (iv). It is not necessary to determine whether the services performed by the defendants in fi. fa. after ginning were performed as an in-

cident to ordinary farming operations because as to the grower or producer the defendants' in fi. fa. facilities and warehouse constituted a "terminal market". Irrespective of the provisions of the contract between the growers and the defendants respecting advancements, cross-credit, etc., the contract amounted only to an agreement to buy and sell.

While Federal statutes and decisions are not binding on us in this matter they are persuasive and may be looked to for aid and enlightenment. In Burger *v*. Social Security Board, 66 Fed. Supp. 619, and Miller *v*. Burger, 161 Fed. 2d 992, the statute involved was the Social Security Act but the provisions of that act regarding the exemption of agricultural labor from coverage and defining "agricultural labor" are exactly the same as the Georgia act under consideration here. In those cases "terminal market" was held to refer to the growers' or producers' market and was one where the grower or producer parted with his economic interest in his commodity. We think the same reasoning applies in the instant case under the construction of the act which we are bound to apply. It is clear that the contract growers in the instant case parted with their economic interest in all the seed produced by them when the cotton was ginned. That was when the seed was sold by them and was bought by the defendants in fi. fa. Mr. Summerour testified in part: "When the cotton is ginned the farmers agree to gin it at the company gin and the seed is taken at that time and put in the warehouse. They were stored at the same time. The seed were bought from the farmer at the time they were ginned and he, the farmer, never touches them after that. When the cotton is ginned the farmer takes the baled cotton and our company takes the seed and puts it in the warehouse. That is when the seed is bought from the farmer." After that nothing is done to the seed that benefits the grower. The mere grading of the seed to determine what prices will be paid is not for the grower's benefit in this sense.

Since the term "terminal market" refers to the grower's market and the grower parts with all economic interest at the time of the ginning and nothing further is done to the seed for the grower's benefit, the services rendered by the defendants in fi. fa. in relation to the seed after it reaches them subsequent to the gin-

ning are rendered after the seed reach a "terminal market" and, therefore, these services are not "agricultural labor" exempt from coverage by the act, and the court erred in finding otherwise.

The court erred in dismissing the levy and in denying the amended motion for a new trial.

*Judgment reversed. Quillian and Nichols, JJ., concur.*